IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD COX,                              *

Petitioner,                              *

v.                                       *          Civil Action No. PWG-19-3443

WARDEN ALLEN GANG, and                   *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND                        *

Respondents.                             *
                                       ***

## MEMORANDUM OPINION

Petitioner Ronald Cox filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §

2254, challenging his 2009 conviction in the Circuit Court for Baltimore City. ECF No. 1.

Respondents assert that the Petition is subject to dismissal because it raises procedurally defaulted

and meritless claims. ECF No. 13. Mr. Cox filed a reply. ECF No. 17. No hearing is necessary to

resolve the matter. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District

Courts*; Loc. R. 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000)

(petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, I

shall deny the Petition. I will grant a certificate of appealability on one of Mr. Cox's claims.

## BACKGROUND

Mr. Cox was convicted of first-degree murder and related offenses on January 29, 2009.

ECF No. 13-7 at 89-90. The Court of Appeals summarized the underlying facts of the crime and

circuit court procedural history as follows:

> On December 28, 2007, at approximately 12:38 p.m., Baltimore City Police
> Officer William Keitz found Todd Dargan lying face up, bleeding and
> unresponsive, at the Church Square Shopping Center in Baltimore. Officer Keitz
> called for a medic and surveyed the scene. He later testified that he found a bullet

casing and a head wrap, or "do-rag" at the crime scene. The lead detective on the case, Baltimore City Homicide Detective David McDermott, arrived on the scene at approximately 1:00 p.m., accompanied by Detective Chester Norton. At that time, Dargan had already been transported to the hospital. Upon arrival, Detective McDermott canvassed the area and observed the head wrap and bullet casing as well.

Baltimore City crime lab technician Natalie Hoban arrived on the scene with another evidence technician, Tech Payne, at approximately 2:40 p.m. Ms. Hoban preserved the physical evidence at the scene and identified the bullet casing observed by law enforcement to be a nine-millimeter cartridge casing. Ms. Hoban later testified at trial that, although the casing was dusted for latent fingerprints, none were found. The day after the incident, Dr. Donna Vincenti, an assistant medical examiner with the Office of the Chief Medical Examiner, conducted an autopsy of the victim's body. Dr. Vincenti determined that the victim sustained a gunshot wound to the head and the cause of death was homicide.

At approximately 12:30 p.m. on the same day the victim was shot, Baltimore City Police Detectives Milton Smith, III, Derek Phyall, and Eugene Bush were patrolling in an unmarked car approximately ten blocks away from the Church Square Shopping Center when they observed Petitioner driving a black 2006 Mercedes Benz without his seatbelt fastened. Rodney Johnson, a black male wearing a black hooded sweatshirt, was sitting in the passenger's seat. When the car failed to come to a complete stop at a stop sign, the detectives initiated a traffic stop. Although all three detectives testified at a pretrial hearing involving [Mr. Cox's] motion to suppress, the exact timeline of the events that followed, between the initial stop and [Mr. Cox's] arrest, remains unclear.

According to the findings of the Circuit Court at the suppression hearing, when the police stopped Mr. Johnson and [Mr. Cox], Mr. Johnson's hands were visibly shaking, and [Mr. Cox] appeared calm. As the detectives spoke with [Mr. Cox] and Mr. Johnson, a series of calls came over the police radio reporting the nearby shooting, and Mr. Johnson appeared increasingly nervous as he overheard the calls. Observing this, Detective Smith asked Mr. Johnson if he possessed anything illegal, and after Mr. Johnson replied that he did not, the detective asked if he "could check." Mr. Johnson stepped out of the car and Detective Smith patted him down but did not find either drugs or weapons in his possession. Mr. Johnson was instructed to sit on the curb beside the car.

Based on the testimony of the officers at the suppression hearing and police dispatch records, the Circuit Court found that, between fifteen and twenty-three minutes after the initial stop, a description of the suspect in the Church Square shooting was relayed over the radio describing a "black male wearing a black hoodie." Noting that Mr. Johnson matched that description, Detective Phyall asked [Mr. Cox] if there was anything in the car. In response, [Mr. Cox] stepped out of the car with his hands in the air. Detective Phyall testified that he felt this action

constituted consent to a search, and while Detective Bush patted [Mr. Cox] down, finding no drugs or weapons, Detective Phyall searched the vehicle and found a handgun in the trunk. At this point, both [Mr. Cox] and Mr. Johnson were placed under arrest.

[Mr. Cox] and Mr. Johnson filed a pretrial motion to suppress the evidence obtained during the stop, namely the recovered gun. The Circuit Court held an evidentiary hearing, during which the court heard testimony from Detectives Phyall, Bush, and Smith, and subsequently granted the motion and suppressed the handgun in addition to any testimony relating to the search or arrest. The court found that the initial stop was lawful, but concluded that the length of that detention, which was between fifteen and twenty-three minutes, was unreasonable. The court based this determination on the facts that the police did not conduct a check for warrants prior to the arrest, and no citations were issued during the period between the initial detention and the call reporting the description of the murder suspect. Additionally, the hearing judge found that the police lacked both consent and probable cause to search the vehicle. *See Cox,* 194 Md.App. at 637–38, 5 A.3d at 734. The State does not challenge that the detention, and therefore the search and subsequent arrest, were unlawful.

The Circuit Court held a second pretrial suppression hearing regarding [Mr. Cox's] motion to suppress the testimony of a fellow inmate named Michael West. At the hearing, Mr. West testified that he had been arrested, on an unrelated weapons charge, on the same date as [Mr. Cox] and Johnson. According to Mr. West, he saw [Mr. Cox] and Mr. Johnson the next day in central booking. Mr. West explained that he had known Mr. Johnson for approximately fifteen years. According to Mr. West, Mr. Johnson told Mr. West about the murder and the subsequent arrest in detail, without provocation, while [Mr. Cox] stood close by, listening and occasionally filling in details. Mr. West continued that, according to Mr. Johnson, [Mr. Cox] and Mr. Johnson were driving by the shopping center when [Mr. Cox] identified the victim as someone who had been involved in the murder of an acquaintance. Mr. Johnson told Mr. West that [Mr. Cox] offered him $15,000 to kill the victim. When Mr. Johnson agreed, Petitioner gave him a nine-millimeter pistol and dropped him off on Caroline Street, adjacent to Church Square Shopping Center. Mr. Johnson ran up behind the victim and shot him in the head, then met [Mr. Cox] on Bond Street around the corner, put the gun in the trunk of the car, and got into the vehicle. According to Mr. West, Mr. Johnson then explained that they had been pulled over, and [Mr. Cox] added that the police had noticed Mr. Johnson's nervousness.

[Mr. Cox's] counsel objected to the admission of this testimony as hearsay, a violation of his right to confrontation, and as the "poisonous fruit" of the illegal detention, search, and arrest. The hearing court denied [Mr. Cox's] motion to suppress the statements, finding that, because [Mr. Cox] made an independent decision to speak to Mr. West and did not deny the statements made by Mr. Johnson, the statements were "'outside of the ambit of the fruit of the poisonous

tree doctrine.'" *Cox,* 194 Md.App. at 638, 5 A.3d at 735. As to the hearsay issue, the hearing court held that the statements by Mr. Johnson, to Mr. West, were admissible under Md. Rule 5–803(2) as adopted admissions by Petitioner, with the exception of those statements regarding events between when Mr. Johnson left [Mr. Cox's] car and when he returned, as [Mr. Cox] would not have had first-hand knowledge of those events and thus could not adopt the statements. To support its ruling, the hearing court cited to *Henry v. State,* 324 Md. 204, 596 A.2d 1024 (1991), *cert. denied,* 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992), in which we held that a party can make a "tacit admission" adopting another's statement by his or her silence.

Following the pretrial motions hearings, trial commenced on January 27, 2009. Police officers Keitz, McDermott, Norton, and Phyall testified regarding the stop, arrest, and crime scene. The lab technician and medical examiner testified as to the crime scene evidence and wounds on the victim. Additionally, Michael West testified about the conversation between Mr. Johnson, himself, and [Mr. Cox]. At the pretrial suppression hearing, Mr. West testified regarding the statements made by Mr. Johnson, which were deemed tacit admissions of [Mr. Cox]. The jury convicted Petitioner of first degree murder, use of a handgun in the commission of a felony or a crime of violence, wearing, carrying or transporting a handgun, and possession of a regulated firearm after conviction of a disqualifying crime.

*Cox v. State*, 421 Md. 630, 638–41 (2011). Mr. Cox was sentenced to serve life plus twenty years imprisonment. ECF No. 13-8 at 28.

Mr. Cox noted an appeal to the Court of Special Appeals, raising three issues:

1. The trial court erred in admitting the hearsay testimony of Michael West in violation of the Confrontation Clause of the Sixth Amendment;

2. The trial court erred in failing to suppress Mr. Cox's statements allegedly made to Michael West at Central Booking following Mr. Cox's unlawful arrest; and

3.  Insufficient evidence to support the convictions.

ECF No. 13-1 at 91.[1] The Court of Special Appeals issued an opinion on September 17, 2010 affirming Mr. Cox's conviction. *Cox v. State*, 194 Md. App. 629, 634 (2010). Mr. Cox filed a petition for writ of certiorari in the Maryland Court of Appeals, which was granted. ECF No. 13-

---

[1]     The errors have been slightly rephrased here for clarity.

1 at 14. On September 20, 2011, the Maryland Court of Appeals affirmed the Court of Special Appeals. *Cox v. State*, 421 Md. 630, (2011).[2]

Mr. Cox sought post-conviction relief with the Baltimore City Circuit Court on July 3, 2017.[3] ECF No. 23-3 at 319-365. Mr. Cox's application asserted the following claims:

A. Ineffective Assistance of Counsel for failure to effectively deal with key witness, Michael West.

1. Failure to point out a critical contradiction in Mr. West's testimony

2. Failure to present evidence of Mr. West's bias

3. Failure to use available evidence to refute Mr. West's claim that he was in Central Booking at the same time as Petitioner

4. Failure to request a limiting instruction in connection with the hearsay testimony of Mr. West

5. Failure to cross examine Mr. West about coaching he received from Detective McDermott

6. Failure to object to improper vouching by the State's Attorney in closing

7. Failure to confront Mr. West's false statement

8. Failure to raise the preserved issue that statements on the back of the photo array had been suppressed at the earlier motion hearing

9. Failure to request a jury instruction that Mr. West was a witness who was promised benefits.

B. Ineffective Assistance of Counsel

---

[2]     The Court of Appeals found that Mr. Johnson's statements were nontestimonial in nature and did not violate the confrontation clause per the holding in *Crawford v. Washington*, 541 U.S. 36 (2002). *Cox*, 421 Md. at 643-650.

[3]     Mr. Cox previously filed and voluntarily withdrew two petitions for post-conviction relief. ECF No. 23-3 at 3-86, 105-209; ECF No. 13-1 at 17; ECF No. 23-3 at 216-304; ECF No. 13-1 at 20.

    1. Failure to argue that the collateral estoppel form of double jeopardy precluded the state from introducing new evidence of his co-defendant's involvement in the offense for which he was standing trial

    2. Failure to properly advise Petitioner of his right to testify

    3. Failure to call available witnesses including acquitted co-defendant Rodney Johnson

C. Violation of Constitutional Rights

    1. Failure to elicit for the jury the relationship between informant, Mr. West, and his handler, Detective Kershaw

    2. Failure to show how Petitioner's Confrontation Clause rights were violated

    3. Failure to object to the court's improper voir dire that presented multi-part questions that allowed jurors to make a self-assessment of bias

    4. Failure to object to the violation of Petitioner's constitutional and statutory speedy trial rights under the Sixth Amendment of the United States Constitution

    5. Exclusion of evidence of Mr. Johnson's prior acquittal deprived Petitioner of his right to due process[4]

*Id.* A hearing was held on December 18, 2017. ECF No. 13-9. The circuit court issued an order on November 14, 2018 denying relief. ECF No. 13-1 at 254-286.

    Mr. Cox filed an application for leave to appeal the circuit court's denial of his post-conviction petition on December 13, 2018. ECF No. 13-1 at 287-304. The application only included six of the claims raised in his post-conviction petition, namely:

    1. Ineffective assistance of counsel for failure to investigate and present exculpatory Central Booking records and witnesses (post-conviction claim "A3")

    2. Ineffective assistance of counsel for failure to impeach Michael West (post-conviction claim "A2")

---

[4]     The claims are organized in the same manner as the circuit court during post-conviction proceedings.

3. Ineffective assistance of counsel for failure to call available witnesses (post-conviction claim "B3")

4. Ineffective assistance of counsel for failure to object to improper voir dire (post-conviction claim "C3")

5. Ineffective assistance of counsel for failure to object to improper vouching (post-conviction claim "A6")

6. Ineffective assistance of appellate counsel for failure to raise excluded photo array as an error on appeal (post-conviction claim "A8")

ECF No. 13-1 287-304. The Court of Special Appeals issued an order on September 9, 2019 denying

Mr. Cox's application. ECF No. 13-1 at 346.

Mr. Cox's Petition, filed by counsel, was submitted to this Court on December 2, 2019,

ECF No. 1, along with an accompanying Memorandum in Support filed on December 10, 2019,

ECF No. 3.

## PROCEDURAL DEFAULT

Where a petitioner has failed to present a claim to the highest state court with jurisdiction

to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct

appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman

v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477

U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41,

46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481

(D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).  A procedural

default also may occur where a state court declines "to consider the merits [of a claim] on the basis

of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th

Cir. 1999).

The Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id*. (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner*

*v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Mr. Cox has not expressly raised actual innocence as a defense to procedural default.[5]

Here, Mr. Cox raises fifteen claims in the Petition filed with this Court: [1] ineffective assistance of counsel for failure to effectively cross examine Michael West about contradictions in his testimony, [2] ineffective assistance of counsel for failure to present evidence of Michael West's bias, [3] ineffective assistance of counsel for failure to utilize central booking records in his defense at trial, [4] ineffective assistance of counsel for failure to cross-examine Michael West about coaching from Detective McDermott, [5] ineffective assistance of counsel for failure to request a jury instruction regarding a witness who received benefits for testimony, [6] ineffective assistance of counsel for failure to object to improper vouching by the state's attorney in closing argument, [7] ineffective assistance of appellate counsel for failure to argue that the photo array statement had been suppressed, [8] ineffective assistance of counsel for failure to argue collateral estoppel double jeopardy, [9] ineffective assistance of counsel for failure to properly advise Mr. Cox of his right to testify, [10] ineffective assistance of counsel for failure to call Mr. Johnson as a witness at trial, [11] ineffective assistance of counsel for failure to elicit the relationship between Michael West and Detective Kershaw, [12] ineffective assistance of counsel for failure to show how Confrontation Clause rights were violated, [13] ineffective assistance of counsel for failure to object to improper voir dire questions requiring self-assessment of bias, [14] ineffective assistance of counsel for failure to object to speedy trial rights, [15] ineffective assistance of appellate counsel for failure to raise preserved issue of trial court's refusal to permit the jury to hear that co-defendant Mr. Johnson had been acquitted of murder at his trial.

---

[5]     Mr. Cox stated that the defaulted claims "speak to the Petitioner's actual innocence," but does not invoke the actual innocence exception to procedural default or brief its stringent requirements. ECF No. 17 at 2.

Mr. Cox raised claims 1, 4, 5, 8, 9, 11, 13, 14, and 15 in his post-conviction petition, but his application for leave to appeal to the Court of Special Appeals neglected to include these claims.[6] Accordingly, these claims are unexhausted and procedurally defaulted. *See Pevia v. Bishop*, Civil. No. ELH-16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and the state courts would now find that he cannot assert those claims.")

Mr. Cox contends that his claims are not procedurally defaulted because he was not required to include all claims in his application for leave to appeal to the Court of Special Appeals. ECF No. 17 at 1-2. Mr. Cox is mistaken. To properly exhaust a post-conviction claim in Maryland, the claim must be fairly presented to *both* the post-conviction court and to the Court of Special Appeals in an application for leave to appeal. *See Allen v. Acting Warden of WCI*, No. CV PX-17-2917, 2019 WL 3323181, at *2 (D. Md. July 24, 2019) (explaining that if a petitioner is denied relief on his post-conviction petition, he must file an application for leave to appeal to the Court of Special Appeals, and if this application is denied then no further review is available and the claim is exhausted). Mr. Cox offers no potential excuse for his procedural default. The Court therefore finds that claims 1, 4, 5, 8, 9, 11, 13, 14, and 15 are unexhausted and procedurally defaulted.

---

[6]     Respondent points out that Claim "2" asserts arguments that were not included in Mr. Cox's application for leave to appeal his post-conviction petition. ECF No. 13 at 41. Indeed, on this issue, Mr. Cox only sought to appeal whether his counsel was ineffective for failing to impeach Michael West with his history as a police informant as discussed in *Jones v. State*, 132 Md. App. 657 (2000). ECF No. 13-1 at 293-294. As discussed herein, any issue not presented to the Court of Special Appeals in the application for leave is unexhausted and procedurally defaulted. Accordingly, the Court will limit its discussion of Claim "2" to the arguments presented in Mr. Cox's application for leave to appeal.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)) (internal quotation marks omitted). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits either

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (internal citation omitted).

Pursuant to the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborongh v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (internal quotation marks and citation omitted).

Further, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on "an unreasonable determination of the facts." *Id.* (internal citation and quotation marks omitted). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (internal citation and quotation marks omitted). The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Buck v. Davis*, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in

*Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). That test requires the petitioner to show that (a) his counsel's performance was deficient, and (b) he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *Buck*, 137 S.Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *Harrington v. Richter*, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The "first prong sets a high bar." *Buck*, 137 S.Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Buck*, 137 S.Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting

13

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991–92 (4th Cir. 2015) (citing *Strickland*, 466 U.S. at 697). Because either prong is fatal to a petitioner's claim, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## I.     Claim 2: Failure to Present Evidence of Michael West's Bias

In Claim 2, Mr. Cox argues that his trial counsel was ineffective because she failed to elicit evidence of Michael West's prior cooperation with law enforcement. Mr. Cox alleges that Mr. West had assisted law enforcement in securing convictions in the matter of *Jones v. State*, 132 Md. App. 657 (2000) and that fact would have impeached Mr. West's testimony that he had not assisted law enforcement in any other case. ECF No. 3 at 12. The circuit court rejected the claim, finding that trial counsel was not deficient. ECF No. 13-1 at 261.

At trial, Michael West was asked on cross-examination:

"Are you cooperating with the detectives on some other investigation?"
"Have you ever met with the Feds regarding any other investigation?"

ECF No. 13-6 at 132. Mr. West answered "No" to both questions. Mr. West's participation in the *Jones v. State* matter would not have impeached his answers. First, the Jones trial occurred in 1999,

14

approximately 10 years before Mr. Cox's trial. *Jones*, 132 Md. App. at 673. Mr. West's responses to trial counsel's present tense questions would not have been false based on any alleged cooperation from 1999. Furthermore, the *Jones* opinion does not establish that Mr. West was biased because he was previously an "informant" or received a benefit for testifying for the prosecution. Indeed, according to *Jones*, Mr. West's statements to law enforcement were elicited by the defense through the hearsay testimony of a detective. Furthermore, Mr. West's statements were only inadvertently helpful to the prosecution. *Id.* at 662-664.[7] There is no indication that Mr. West testified at the *Jones* trial or received any benefit for his involvement in the *Jones* matter. Accordingly, the circuit court's conclusion that counsel's performance was not deficient was neither contrary to, nor an unreasonable application of, federal law.

## II.      Claim 3: Failure to Utilize Central Booking Records

Mr. Cox contends in Claim 3 that his counsel was ineffective for failing to present evidence that Michael West was never in the same location in Central Booking as Mr. Cox or Mr. Johnson. ECF No. 3 at 14-17. Mr. Cox claims that his counsel failed to utilize the Offender Activity Logs, which track the movement of prisoners at Central Booking, and which would refute Mr. West's testimony that a meeting occurred between Mr. Cox, Mr. Johnson, and Mr. West.

Lieutenant Weinberg, who works in Central Booking, testified at the post-conviction hearing. ECF No. 13-9 at 12-23. He explained that offenders wear armbands with barcodes that are scanned in different areas of the facility to track their movement. *Id.* at 16. Mr. Cox entered the Offender

---

[7]      Mr. West's statements regarding the physical description of the shooter, brought in via the testimony of Detective Gary Hoover, differed from other witnesses, but ultimately Mr. West's statements showed a common motive and purpose among the two perpetrators in support of a conspiracy conviction. *Jones*, 132 Md. App. at 662-664.

Activity Logs for Michael West and himself into evidence at the hearing as proof that Mr. Cox and Mr. West were never in the same location. *Id.* at 19, 21.

Mr. Cox's trial counsel testified that she subpoenaed the records from Central Booking and spoke to the records' custodian. *Id*. at 47-48. The custodian advised her that the records were often not terribly accurate and they "lose people and people move around all the time." *Id.* at 54.  Further, Mr. Cox's trial counsel testified that she was aware that the Assistant State's Attorney had been a Court Commissioner prior to becoming a prosecutor, and that this position provided him with a "unique skill set" to assess the unreliability of the records; Mr. Cox's trial counsel explained that this information played a role in her decision not to use the Central Booking records at trial. *Id.* at 53-54. Mr. Cox's trial counsel characterized her decision not to use the records as "strategic" because they would not have been helpful. *Id.* at 59.

The circuit court dismissed the claim, finding:

> Petitioner maintains that he constantly reminded his trial counsel throughout the trial that, contrary to West's claim that he had a conversation with Johnson and Petitioner in central booking on December 29, 2007, Petitioner did not know West was not housed with him in the same holding cell at any time that day. Petitioner presented Central Booking Facility Offender Activity Logs which electronically records the movement of prisoners in central booking. Although the records clearly show that Petitioner and West were never in the same room, Petitioner asserts that trial counsel's decision not to admit the evidence and leave West's testimony regarding face-to-face conversation with Petitioner and co-defendant Johnson unchallenged constitutes ineffective assistance of counsel.

> Ms. Flynn expressly testified that she made a strategic decision not to introduce the Central Booking record based on a discussion with an employee of the facility. In addition, the State's Attorney, David Grzechowiak, was a former Court Commissioner who had unique knowledge regarding the inner workings of the facility. Ms. Flynn was aware of such a fact and made a strategic decision not to pursue this evidentiary line in trial because it would be difficult for her to prove West's line of reasoning that it was impossible for West and Johnson to be proximate enough to have conversation. Trial counsel's choice not to present Central Booking Facility Activity Logs to refute West's testimony is a valid trial tactic, therefore, Petitioner has not satisfied *Strickland* standard.

16

ECF No. 13-1 at 261-262.

Respecting the "doubly deferential" standard applicable to ineffective assistance of counsel claims, I will defer to the circuit court's conclusion that trial counsel's performance was not deficient and deny relief on this claim. Arguably, there is a possibility that the circuit court's finding may constitute an unreasonable application of *Strickland* to the facts of Mr. Cox's case. Considering the State's case rested entirely on Mr. West's testimony of Mr. Cox's tacit admissions,[8] the circuit court's finding that "the records clearly show that Petitioner and Mr. West were never in the same room" seems to be inconsistent with a finding that Mr. Cox's counsel was not deficient.

I believe it can be considered a "close call" as to whether the state courts' decisions denying relief involved an unreasonable application of *Strickland*. Although I defer to the circuit court's conclusion that counsel's performance was not deficient, I am reluctant to conclude that reasonable jurists would not find its assessment of the claim debatable or wrong. I conclude the issue deserves further review sufficient to warrant a certificate of appealability under 28 U.S.C. § 2253(c)(2). Accordingly, I certify the following issue for appeal: was Mr. Cox's trial counsel ineffective for failing to utilize the Central Booking Records as part of his defense at trial?

### III.   Claim 6: Failure to Object to Improper Vouching

In Claim 6, Mr. Cox contends that the Assistant State's Attorney improperly vouched for witness Michael West during his closing argument. Mr. Cox complains that the Assistant State's Attorney argued that Mr. West "poured his heart out" and "testified truthfully and accurately." ECF

---

[8]     The Court notes that Mr. West was only able to testify at trial because the circuit court made a finding that Mr. Johnson's inculpatory statements qualified for the tacit admission exception to the hearsay rule because of Mr. West's physical proximity to Mr. Cox when the statements were made. ECF No. 74-81. The circuit court's ruling rested on a finding of fact that Mr. Cox was present with Mr. Johnson and Mr. West and heard Mr. Johnson's inculpatory statements. *Id.* at 77-78.

No. 3 at 22; ECF No. 13-7 at 58. The circuit court dismissed Mr. Cox's post-conviction ineffective assistance of counsel for failure to object to improper vouching claim. Citing Maryland law that relied on federal precedent, the circuit court determined that the prosecutor's statements did not amount to improper vouching. The circuit court further determined that even if the comments could be deemed improper, the error did not influence the jury's verdict and was harmless. ECF No. 13-1 at 265-269.

In arguments to the jury, "[i]t is impermissible for a prosecutor to vouch for or bolster the testimony of government witnesses." *United States v. Sanchez,* 118 F.3d 192, 198 (4th Cir.1997); *United States v. Lewis,* 10 F.3d 1086, 1089 (4th Cir.1993). "Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." *Sanchez,* 118 F.3d at 198. While vouching and bolstering are always inappropriate, "[i]mproper remarks during closing argument do not always mandate retrial. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 198 (citing *United States v. Mitchell,* 1 F.3d 235, 240 (4th Cir.1993)). In determining whether a prosecutor's argument prejudicially affected petitioner, the Court must consider: "(1) the degree to which the comments could have misled the jury; (2) whether the comments were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comment; and (4) whether the comments were deliberately made to divert the jury's attention." *Sanchez,* 118 F.3d at 198.

The prosecutor's comments during closing arguments must be evaluated in context. Below is the passage from which Mr. Cox excerpted the allegedly improper remarks:

> Ladies and gentlemen, to judge credibility, the judge told you to use your own personal experiences. You get to use common sense. You saw Michael West testify. You got to observe his demeanor, how he testified, how he answered questions, did his tone change the way he answered questions for me from Ms. Flynn, was he

changed—was he more cooperative for me? I submit that he was not. He sat there and he answered every question that we asked him without flopping back and forth from the answer to me and Ms. Flynn. I submit to you that he poured his heart out, that he testified truthfully and accurately the conversation he had with Ronald Cox and Rodney Johnson.

ECF No. 13-7 at 58.

Prior to closing arguments, the trial judge instructed the jury that closing arguments were not evidence and they were the sole judge of whether a witness should be believed. ECF No. 13-7 at 42, 44. During his closing argument, the prosecutor reiterated to the jury that they were the sole judge of Michael West's credibility. ECF No. 13-7 at 54. The allegedly improper statements occurred when the prosecutor was pointing out evidence from which the jury could use to draw the conclusion that Mr. West's testimony was credible. From his remarks to the jury, it is apparent that the prosecutor was convinced of the truthfulness of Mr. West's testimony, not from anything outside of the evidence before the jury, but from Mr. West's demeanor and the consistency of his testimony. The prosecutor's comments did not amount to improper vouching. In any event, there is no reason to believe that the jurors could have been misled by the remarks or any basis for believing the remarks "were deliberately made to divert the jury's attention." The remarks were isolated and, both the judge and the prosecutor instructed the jury that they were the sole judges of Mr. West's credibility.  The alleged vouching did not infect the trial with unfairness. The circuit court's determination that the remarks were neither prejudicial nor improper and dismissal of Mr. Cox's ineffective assistance of counsel claim on this issue was not contrary to nor an unreasonable application of federal law.

### IV.   Claim 7: Failure to Argue on Appeal that Statement on Back of Photo Array had Been Excluded from Evidence

In Claim 7, Mr. Cox contends that his appellate counsel was ineffective for failing to argue on appeal that the statement on the back of the photo array in which Michael West identified Mr. Cox

was erroneously admitted into evidence. ECF No. 3 at 25-27. On the second day of trial, January 28,

2009, a hearing was held where the parties argued about whether two separate photo array statements

should come into evidence: (1) the statements on the back of the photo array in which Michael West

identified Rodney Johnson ("Johnson photo array"), and (2) the statements on the back of the photo

array in which Michael West identified Mr. Cox ("Cox photo array"). ECF No. 13-6 at 9-14. The trial

judge ruled that the statement on the back of the Johnson photo array was not admissible as a tacit

admission because Mr. Cox was not present when Mr. West made the statement to the Baltimore

police. *Id.* at 12-14. The language of the ruling is not clear as to whether the statement on the back of

the Cox photo array was also excluded from evidence at trial.

When the prosecution attempted to introduce the Cox photo array, the statement on the back

was included in the exhibit. *Id.* at 98.  Defense counsel objected on the basis that it was suppressed.

*Id.* at 98-99. The prosecution took the position that the Johnson photo array statement was removed,

but the statement on the back of the Cox photo array was "his conversation." The trial court overruled

the objection, and the statement was admitted into evidence. *Id.* The statement on the back was read

aloud by Mr. West:

> I know this man from Central Booking and he told me that he was the driver and he
> who Roger, that killed "T." And he also said he wanted to kill "T" himself but Roger
> said he would do it. And he told Roger if you do it I will give you $15,000. And he
> did.

*Id.* at 100.

Mr. Cox's appellate counsel, Mark Gitomer, testified at the post-conviction hearing that there

was no strategic reason why he omitted this claim from Mr. Cox's direct appeal. ECF No. 13-9 at 67.

The circuit court opinion determined that the Cox photo array had been suppressed by the trial judge

at the hearing, but Mr. Cox was not prejudiced by the failure of his appellate counsel to raise the issue

on appeal. Namely, the statement on the photo array was duplicative of Mr. West's earlier trial testimony relaying Mr. Cox's statements to him in Central Booking.  ECF No. 13-1 at 269-270.

The record reflects that Michael West had already testified, under the tacit admission exception to the hearsay rule,[9] to the contents of the statement on the back of the Cox photo array. ECF No. 13-6 at 89. Mr. West testified to what he heard Rodney Johnson say that Mr. Cox said about the murder. Appellate counsel did challenge on appeal the trial court's decision to permit Mr. West to relay Mr. Cox's inculpatory statements through the hearsay of Rodney Johnson. Both the Court of Special Appeals and the Maryland Court of Appeal upheld the admission of Mr. West's testimony. *State v. Cox*, 194 Md. App. 629 (2010); *State v. Cox,* 421 Md. 630 (2011).

Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit, *Bell v. Jarvis,* 236 F.3d 149, 164 (4th Cir. 2000), and we "must accord [ ] counsel the presumption that he decided which issues were most likely to afford relief on appeal," *id.* (internal quotation marks omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986) (cited with approval in *Smith v. Robbins,* 528 U.S. 259, 288 (2000)). Here, Mr. Cox's appellate counsel unsuccessfully pressed the strongest issue on appeal, i.e., Michael West should not have been allowed to testify under the tacit admission exception to the hearsay rule. That decision is entitled to the presumption of effectiveness.

---

[9]     On January 23, 2009 the trial court held a hearing on Mr. Cox's motions to suppress. ECF No. 13-4. Mr. Cox sought to suppress his statements to Mr. West in Central Booking on the theory that they were "fruit of the poisonous tree" (*Id.* at 13-21) and Mr. Johnson's statements about what Mr. West said on the theory that they were inadmissible hearsay (*Id.* at 24-29). The trial court ruled that Mr. Cox's statements to Mr. West were not fruit of the poisonous tree (*Id.* at 21-24). After hearing testimony from Mr. West, the trial court concluded that statements made in Mr. Cox's presence about activities that occurred in his presence were admissible under the tacit admission exception to the hearsay rule. *Id.* at 74-81.

In any event, even if counsel had raised the issue on appeal, it would have at best been harmless error because the appellate courts found the content of the statement on the back of the Cox photo array properly admissible through the testimony of Michael West. The circuit court's conclusion that Mr. Cox was not prejudiced by his appellate counsel's failure to raise the photo array statement as an issue on appeal is neither contrary to nor an unreasonable application of federal law.

## V.   Claim 10: Failure to Call Rodney Johnson as a Witness at Trial

In Claim 10, Mr. Cox contends that his trial counsel was ineffective for failing to call Rodney Johnson as a witness at trial. ECF No. 3 at 31-33. Mr. Cox argues that Mr. Johnson should have been called as a witness because he had been acquitted on all charges at his trial and could have offered exculpatory testimony. Mr. Cox alleges that his trial counsel's failure to call Mr. Johnson stems from her failure to adequately investigate his case. *Id.* at 32. Mr. Cox contends, "[t]here was no conceivable tactical advantage in failing to call Rodney Johnson as a witness for the defense. As such counsel's failure to do so was 'objectively deficient.'" *Id.* at 33.

Trial counsel's testimony at the post-conviction hearing revealed her strategy for not calling Rodney Johnson as a witness at trial. ECF No. 13-9. Trial counsel testified that she spoke to Mr. Johnson's counsel and determined that Mr. Johnson would not be willing to testify and would not be a helpful witness. *Id.* at 37. Trial counsel also testified that calling Mr. Johnson could possibly "open the door" to the admission of the excluded murder weapon because Mr. Johnson did not have standing to challenge the unreasonable search of the vehicle under the Fourth Amendment. *Id.* at 50-51. Trial counsel was concerned about calling Mr. Johnson as a witness because the gun was the only physical evidence linking Mr. Cox to the murder. *Id.*

The circuit court dismissed Mr. Cox's post-conviction claim:

This court finds that not calling co-defendant Johnson to testify at Petitioner's trial was a strategic decision which trial counsel thought to be in her client's best interests,

22

> which Ms. Flynn explained during the trial and in her testimony at the post-conviction proceeding. Even if trial counsel's decision not to call Johnson as a witness was deficient performance to meet the first prong of the *Strickland* test, Petitioner does not point to any single piece of evidence of which the jury was deprived by Johnson's absence, and instead argues that prejudice arises from the fact that he was not there in person to testify provided that he was already acquitted of a murder charge arising of the same incident at issue.

ECF No. 13-1 at 274.

The decision not to call particular defense witnesses is normally a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which "'[Courts] must afford ... enormous deference.'" *United States v. Terry,* 366 F.3d 312, 317 (4th Cir. 2004) (quoting *United States v. Kozinski,* 16 F.3d 795, 813 (7th Cir. 1994)). In regard to a decision to call or not call a witness, "there is a presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *Byram v. Ozmint,* 339 F.3d 203, 209 (4th Cir. 2003) (quoting *Strickland,* 466 U.S. at 669).

Trial counsel made a strategic, tactical decision not to call Rodney Johnson after consideration of the consequences. It was not ineffective assistance. *See Cagle v. Branker*, 520 F. 3d 320, 327 (4th Cir. 2008) (strategic decision not to open the door to damaging evidence is not ineffective assistance); *Meyer v. Branker*, 506 F.3d 358, 371 (4th Cir. 2007) ("It is a cardinal tenet of the Supreme Court's ineffective assistance jurisprudence that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable'" (quoting *Strickland,* 466 U.S. at 690)). Trial counsel's strategic choice not to call Rodney Johnson withstands constitutional scrutiny. Claim 10 is without merit.

## VI.   Claim 13: Failure to Object to Improper Voir Dire Questions

In Claim 13, Mr. Cox contends his counsel was ineffective for failing to object to three, multi-part voir dire questions that required the jurors to assess their own bias:

(1) Is there any member of the jury pool who has such a bias or prejudice toward a crime involving the use of a handgun or other assault weapon or any crime involving the offense of murder that it would impair your ability to render a fair and impartial verdict in the case?

(2) Is there any member of the jury pool who has been a witness for the prosecution in a criminal case and, if so, was there anything about that experience that would lead you to feel that you may have some prejudice in this case, either for the prosecution or for the defense?

(3) Is there any member of the jury pool who has either served as a member of a jury panel, state or federal, or have you ever served as a member of a grand jury panel, state or federal, and if so, did anything occur during your jury service that might possibly affect your ability to arrive at a fair and impartial verdict in this case, based solely upon the evidence introduced at trial?

ECF No. 13-5 at 36.

Mr. Cox argues that the Maryland Court of Appeals opinion in *Dingle v. State*, 361 Md. 1 (2000) prohibited multi-part voir dire questions requiring potential jurors to evaluate their own bias and his trial counsel was ineffective when she failed to object. The circuit court dismissed Mr. Cox's claim in its post-conviction ruling, concluding that counsel had no basis on which to lodge an objection. ECF No. 13-1 at 276-278. Mr. Cox argues in his habeas petition that the circuit court misapplied Maryland precedent, *Dingle v. State*, 361 Md. 1 (2000), to the facts of his case in deciding whether his counsel was deficient. ECF No. 3 at 41.

The law on compound jury selection questions evolved over a fourteen-year period in Maryland, starting with the decision in *Dingle v. State* and concluding in 2014 with the decision in *Pearson v. State*, 437 Md. 350 (2014).  In *Dingle*, the Maryland Court of Appeal held that the trial court erred when it asked several two-part questions concerning whether jurors had certain experiences or associations and whether those experiences and associations would affect their ability to be fair and impartial. *Dingle,* 361 Md. at 8-9. The *Dingle* court found the questions objectionable because it "endorses a voir dire process that allows, if not requires, the individual voir dire venire

person to decide his or her ability to be fair and impartial...the procedure…shifts from the trial judge to the venire the responsibility to decide juror bias." *Id.* at 21.

Although the Maryland Court of Appeal rejected voir dire questions that required jurors to decide their own bias, in 2002 it approved the phrasing of a self-assessment question in *State v. Thomas*, 369 Md. 202 (2002). The issue on appeal in *Thomas* was whether the trial court erred in refusing to ask, "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at trial where narcotics violations have been alleged?"  The Maryland Court of Appeal found that the trial court erred by not permitting the question.  After *Thomas* was decided, "[as] of May 10, 2002…the state of the law appeared to be that *Dingle* did not apply to a 'strong feelings' compound question." *State v. Davis*, 249 Md. App. at 226.

 Following *Thomas*, Maryland appellate courts affirmed similar two-part questions in *Sweet v. State*, 371 Md. 1 (2002) ("Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?"); *Baker v. State*, 157 Md. App. 600 (2004) ("Do you have any bias or prejudice concerning handguns which would prevent you from fairly weighing the evidence in this case?"); *Singfield v. State*, 172 Md. App. 168 (2006) ("Does any member of the jury panel feel that the nature of this case would make it difficult or impossible for you to render a fair and impartial verdict, specifically because this case involves murder with a handgun?"); and *State v. Shim*, 418 Md. 37 (2011) ("Does any member of the jury have such strong feelings about [the charges] that it would be difficult for you to fairly and impartially weigh the facts?").

In 2014, the Maryland Court of Appeals, in *Pearson v. State*, 437 Md. 350 (2014) abrogated the precedent that permitted two-part "strong feelings" questions. The *Pearson* court recognized that while *Dingle* prohibited two-part questions that required the jurors to assess their own bias, the "strong

feelings" line of cases that followed and specifically permitted such two-part questions created a conflict in the law. *Id.* at 361-363. Thus, there was a period of time in Maryland, between the date of the *Dingle* decision in 2000 and the date of the *Pearson* decision in 2014, when two-part, "strong feelings" questions were permissible during voir dire.

In *State v. Davis*, 249 Md. App. 217 (2021), the date of the petitioner's trial was a central issue in assessing whether his trial counsel was ineffective. The petitioner in *Davis,* like Mr. Cox*,* argued that his trial counsel was ineffective for failing to object to a multi-part voir dire question that required jurors to conduct a self-assessment of bias.[10] Recognizing that Davis's trial occurred in 2007, the Court of Special Appeals held:

> Based on the law as it existed at the time of trial, Mr. Davis's trial counsel's failure to object to the two-part "strong feelings" voir dire question was not a deficiency in counsel's defense of Mr. Davis.

*Id.* at 230.

Mr. Cox's trial occurred in 2009, which was during the timeframe in Maryland in which two-part "strong feelings" questions that required the jurors to conduct a self-assessment of bias were permitted in Maryland. The phrasing of the questions during Mr. Cox's voir dire were similar to the "strong feelings" questions permitted in 2009. The first question Mr. Cox objects to is nearly identical to the question that was approved by the Court of Special Appeals in *Baker v. State*, *supra*. The other two questions are iterations of "strong feelings" about service as a witness or juror. *Id.* Accordingly, the questions asked during voir dire were not prohibited by Maryland law at the time of Mr. Cox's

---

[10]    "The charges, as you may have heard, involve an allegation of attempted murder. Does the nature—and also kidnapping. Do the nature of the charges themselves, just alone, stir up such strong feelings in you that you cannot be a fair and impartial juror in this case?" *State v. Davis,* 249 Md. 217, 219 (2021).

trial and his trial counsel was not deficient for failing to object. The circuit court's dismissal of this claim was neither contrary to, nor an unreasonable application of federal law.

## CONCLUSION

For the reasons stated in this Memorandum Opinion, Mr. Cox's Petition, ECF No. 1, is DENIED.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under the controlling standard, a petitioner must show that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." *Id.* at 338.

As discussed above, as to ineffective assistance of counsel relating to the issue of the booking records, the state courts' conclusion that trial counsel's performance was not deficient appears to be inconsistent with the factual finding that Mr. West and Mr. Cox were never in the same location at the detention facility. The prevailing legal standard of deference to the state courts' conclusion requires this Court to deny Mr. Cox's claim. However, the issue presented in Ground Three is "adequate to deserve encouragement to proceed further." *Id.* at 336. Therefore, the Court will issue a certificate of appealability, limited to the question of whether trial counsel

rendered ineffective assistance of counsel by failing to utilize the booking records as part of Mr.

Cox's defense at trial. A certificate is denied on all other claims.

     A separate Order follows.


<u>December 15, 2022</u>                 <u>      /S/         </u>
Date                                   Paul W. Grimm
                                     Senior United States District Judge